UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br>v.<br><br>DION A. BELL,<br><br>                          Defendant. | Case No. 22-CR-250-JPS<br><br><br><br>**ORDER** |

      Defendant Dion A. Bell ("Bell") is charged with a single count of being a felon in possession of two pistols in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). ECF No. 1. On March 22, 2023, Bell filed a motion to suppress evidence seized pursuant to a search warrant. ECF No. 25. On May 19, 2023, Magistrate Judge Stephen C. Dries issued a Report and Recommendation ("R&R") recommending that the motion to suppress be denied. ECF No. 30.

      Neither the Government nor Bell has filed a *specific* objection to Magistrate Judge Dries's R&R. *See* ECF No. 33 at 1–2 ("Generalized objections, absent specific legal authority, do not invoke the district court's obligation to perform a *de novo* review of a magistrate's decision.") (quoting *United States v. O'Neill*, 27 F. Supp. 2d 1121, 1126 (E.D. Wis. 1998)); ECF No. 34 (letter from Bell's attorney stating that he "do[es] not have specific objections to Magistrate Judge Dries['s] report and recommendation that [he] believe[s] would have merit in law or in fact"). The Court has carefully reviewed the R&R and adopts it in full.

      When reviewing a magistrate's recommendation, the Court is obliged to analyze de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28

U.S.C. § 636(b)(1)(C). However, "[t]he district judge has jurisdiction over the case at all times[,]" and the parties' lack of objection "does not preclude further review by the district judge, *sua sponte*[,]. . .under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Court's review encompasses both the magistrate's legal analysis and factual findings. *See id.*; *see also* Fed. R. Crim. P. 59(b).

The Court adopts the facts stated in the R&R and briefly summarizes those facts here. On May 10, 2022, Milwaukee police officers were dispatched to investigate a complaint regarding a man with a gun. ECF No. 30 at 2. The caller told the police that the man was wearing a red coat and black pants, was armed with a firearm, and had warrants for his arrest. *Id.* The officers located a man matching this description, who fled on foot. *Id.* While fleeing, the man pulled out a gun and fired at the officers. *Id.* The officers were not able to catch the shooter, who they later learned was Donnie Williams ("Williams"). *Id.*

On May 13, 2022, the police canvassed the area of North 11th Street and West Clarke Street in Milwaukee because Williams had listed addresses in the area. *Id.* Officers zeroed in on a three-story triplex located on West Clarke Street after occupants of the first-floor residence told the police they had seen Williams at the second floor of the triplex late the night before. *Id.* The officers entered the triplex through a rear door that led to an internal stairway to all three units, loudly announced their presence, and asked Williams to come out. *Id.* at 2–3. Williams and his brother, Bell, exited the front door that led to the upper two units. *Id.* at 3.

The police arrested Williams and questioned Bell at the scene. *Id.* Bell stated that he was dropped off that day at 11:00 AM to visit his sister, who rented a room at the triplex. *Id.* Bell described the triplex as a "rooming house," but said he did not know how many people lived there, and that he had only been there twice before. *Id.* Officers placed Bell in a squad car and told him they were seeking a search warrant. *Id.* Bell questioned the officers about the planned search, expressing concern about the frequency of people moving in and out given that the building was a rooming house. *Id.*

The affidavit submitted in support of the search warrant request recounted the shooting incident with Williams and officers' efforts to locate Williams. *Id.* The affidavit explained that occupants of the first-floor residence of the triplex told officers that Williams had been "in the upper unit of 1115 W Clarke St." the night prior. *Id.* The affidavit also noted that police had observed movement coming from the third-floor residence "of 1115A W Clarke St." *Id.* at 3–4. The affiant explained that a common hallway linked the two upper units, and that Williams exited the residence while police were there. *Id.* at 4.

A Milwaukee County Circuit Court commissioner approved the warrant, which described the target address as a triplex with three separate residences sharing a common interior hallway: "the first level, with an address of 1117 W. Clarke Street; the second level, 1115 W. Clarke Street; and the third level, 1115A W. Clarke Street." *Id.* The warrant authorized police to search the second- and third- floor residences for "evidence related to attempted first-degree intentional homicide, including firearms, ammunition, weapons, ballistic evidence (e.g., casings and fired bullets), cell phones, clothing, identifiers, latent prints, blood, fiber, DNA, hair, and exterior storage containers." *Id.* at 4–5.

The police executed the warrant the same day. *Id.* at 5. Prior to execution, the police obtained consent to search the third-floor unit from its sole occupants—a man and his two young children—and did not seize anything. *Id.* at 4.

After knocking and announcing their presence, the police entered the second-floor unit. *Id.* at 5. No one was inside. *Id.* The unit contained a kitchen, living room, bathroom, and three additional rooms, two of which had beds. *Id.* The door to one room was open; in that room, police found a box containing, among other things, a Glock pistol carrying case and a letter documenting Bell's 2017 felony conviction. *Id.* They also found a Glock owner's manual and a backpack containing Bell's mail (with a different address listed). *Id.* In a closet in the same room, they found a loaded Ruger .22 caliber pistol hidden under clothing. *Id.* In another, unlocked room, police found ammunition and a shotgun shell. *Id.* In a hallway closet, police found a suitcase containing a loaded Glock 9mm pistol. *Id.*

The officers arrested Bell, who was on extended supervision for the 2017 conviction. *Id.* Bell denied having firearms when officers attempted to interview him the next day, but DNA evidence later linked Bell to both pistols and the carrying case. *Id.*

"A defendant seeking to suppress the fruits of a search bears the burden of demonstrating both that he held an actual subjective expectation of privacy and that the expectation 'is one that society is prepared to recognize as reasonable.'" *United States v. Villegas*, 495 F.3d 761, 767 (7th Cir. 2007) (quoting *United States v. Yang*, 478 F.3d 832, 835 (7th Cir. 2007)). "[K]ey to determining whether an individual has a legitimate privacy interest in a given piece of property" are the following factors:

> (1) whether the defendant had a possessory [or ownership] interest in the thing seized or the place searched, (2) whether he had the right to exclude others from that place, (3) whether he exhibited a subjective expectation that it would remain free from governmental invasion, (4) whether he took normal precautions to maintain his privacy, and (5) whether he was legitimately on the premises.

*United States v. Carlisle*, 614 F.3d 750, 758 (7th Cir. 2010) (quoting *United States v. Peters*, 791 F.2d 1270, 1281 (7th Cir. 1986)).

The Court concurs in Magistrate Judge Dries's finding that Bell lacked a reasonable expectation of privacy in (1) the triplex generally, (2) the specific areas searched, and (3) the items the police seized from the second-floor unit. ECF No. 30 at 7. Bell did not have a possessory or ownership interest in the unit; he was merely visiting his sister, and for only the third time. Indeed, his mail listed a different address. There is no evidence to suggest that he ever stayed overnight. *United States v. Johnson*, No. 08-CR-30036-DRH, 2008 WL 5244847, at *7 (S.D. Ill. Dec. 16, 2008) ("[A] 'drop in' visit would hardly be recognized as a valuable societal institution where one seeks out shelter and privacy away from the public, as would an overnight guest.") (distinguishing *Minnesota v. Carter*, 525 U.S. 83 (1998)). Bell did not know how many people lived in the triplex. Bell expressed concern to the police for the privacy of the triplex's residents but not for himself. Bell did not take any precautions to maintain his privacy, as he left doors to the unit and within the unit open and unlocked when he and Williams walked outside.

Failure to demonstrate a reasonable expectation of privacy in the area searched or the items seized alone is fatal to Bell's motion. However,

the Court further concurs with Magistrate Judge Dries that, even if Bell could challenge the warrant, the challenge would fail. ECF No. 30 at 9.

"A valid search warrant 'require[s] only three things': (1) an independent magistrate issuing it; (2) a showing of probable cause 'that the evidence sought will aid in a particular apprehension or conviction for a particular offense'; and (3) a particular description 'of the things to be seized, as well as the place to be searched.'" *United States v. Gibson*, 996 F.3d 451, 460 (7th Cir. 2021) (alteration in original) (quoting *Dalia v. United States*, 441 U.S. 238, 255 (1979)). Bell challenges the latter two elements. *Id.* at 10; ECF No. 25 at 2–5.

"Probable cause for issuance of a search warrant exists if there is 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Gibson*, 996 F.3d at 461 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The reviewing court's task "is simply to ensure that the state court judge had a substantial basis for concluding that probable cause existed." *Id.* (citation omitted).

In this case, the state court judge who issued the warrant had a substantial basis for concluding that probable cause existed. The affidavit explained that Williams had shot at two officers while fleeing and wearing specific clothing. The affidavit established that evidence of that crime—attempted first-degree intentional homicide—would be found in the second- or third-floor units. It noted that residents of the first-floor unit told police that Williams had been in the upper unit of 1115 W. Clarke Street the night prior, that a hallway linked the second- and third-floor units, that police observed movement from the third-floor unit while outside the residence, and that Williams exited the residence while police were on scene. The first-floor residents' description of the "upper unit" as 1115 W.

Clarke Street was not vague because the second-floor unit has that precise address, while the other two units have different addresses (1117 W. Clarke Street and 1115A W. Clarke Street, respectively).

For the same reasons, the particularity requirement is also satisfied. "As a general matter, '[t]he basic requirement is that the officers who are commanded to search be able from the 'particular' description of the search warrant to identify the specific place for which there is probable cause to believe that a crime is being committed." *United States v. White*, 416 F.3d 634, 637 (7th Cir. 2005) (alteration in original) (quoting *United States v. Hinton*, 219 F.2d 324, 326 (7th Cir. 1955)). While the warrant for a search involving a building with multiple units "must specify the precise unit that is the subject of the search," "the validity of a warrant must be judged on the basis of the information available [when] the warrant issued." *Id.* at 637–38.

The Court agrees with Magistrate Judge Dries's finding that Bell has not shown that "the police knew or should have known, based on the available information at the time the warrant issued, that the warrant was overbroad." ECF No. 30 at 14 (quoting *White*, 416 F.3d at 638). While Bell told police the triplex was a rooming house, police knew that the third-floor unit was occupied only by a man and his children. Police had spoken to residents of the first-floor unit, and there was no one inside the second-floor unit. The second-floor unit contained only two beds, in addition to a kitchen, a living room, and a bathroom. Thus, by describing the triplex as containing three residences, the warrant was not overbroad. Moreover, even if the triplex were a rooming house, all police knew when they applied for the warrant was gleaned from their interactions with the triplex's residents, which included the fact that the triplex has only three separate addresses. This information, in total, reasonably suggests only three residences.

Page 7 of 9

Case 2:22-cr-00250-JPS   Filed 07/05/23   Page 7 of 9   Document 35

Further, to the extent Bell argues that the warrant was overbroad by including the third floor and permission to seize items beyond firearms, the Court concurs with Magistrate Judge Dries that these arguments fail. Even if the third floor and items other than firearms were severed, the seizure of firearms from the second floor remains valid and is the basis of the charge in this case. *See United States v. Reed*, 726 F.2d 339, 342 (7th Cir. 1984) ("The search for [one form of contraband] would remain valid as stated with sufficient particularity and severable from any invalid search."); ECF No. 30 at 17 (noting that "the government avers that it does not intend to use any such evidence—aside from the firearms, the gun box, and other papers—against Bell"). As a final matter, the Court agrees with Magistrate Judge Dries that, for all these reasons, Bell has not rebutted the presumption that the executing officers relied on the warrant in good faith. ECF No. 30 at 18–19.

Based on the foregoing, the Court finds it appropriate to adopt Magistrate Judge Dries's R&R and deny Bell's motion to suppress evidence seized pursuant to a search warrant.

Accordingly,

**IT IS ORDERED** that Magistrate Judge Stephen C. Dries's Report and Recommendation, ECF No. 30, be and the same is hereby **ADOPTED in full**; and

**IT IS FURTHER ORDERED** that Defendant Dion A. Bell's motion to suppress evidence seized pursuant to a search warrant, ECF No. 25, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 5th day of July, 2023.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge